**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | |
| **IRRAGA, CORP.** | CASE NO. 12-02932 (MCF) |
| Debtor | CHAPTER 7 |
| | |
| **NOREEN WISCOVITCH RENTAS TRUSTEE OF THE CHAPTER 7 ESTATE OF IRRAGA, CORP.** | ADV. PROCEEDING: 14-00120 (MCF) |
| Plaintiff | |
| vs. | |
| **QB CONSTRUCTION, INC. & QB CONSTRUCTION S.E.** | |
| Defendants | |

## OPINION AND ORDER

Noreen Wiscovitch Rentas ("Plaintiff"), Trustee of the Chapter 7 estate of Irraga, Corp. ("Debtor"), filed the instant adversary proceeding to obtain the turnover of property and collection of monies from QB Construction, Inc. and QB Construction S.E. ("Defendants"), alleging that Defendants owed Debtor money for landscaping services and materials it provided to Defendants on two occasions. The issues presented are whether the Plaintiff met her summary-judgment burden on the turnover claim and whether the Plaintiff's affidavit should be stricken from the record. The Plaintiff claims that under Debtor's prepetition contracts with Defendants, Debtor completed the projects but payment was not received in full. Defendants argue that they paid amounts owed under the contracts and that the Debtor did not fulfill its contractual obligations and therefore is not eligible to receive payment in full. For the reasons stated below, the Court

-1-

denies the Plaintiff's request for summary judgment because contested facts exist regarding the alleged amounts owed and because the Plaintiff failed to provide undisputed facts in support of the estate's entitlement to outstanding payments under the contracts. The Court also denies Defendants' request to strike the Plaintiff's affidavit.

## JURISDICTION

The Court has jurisdiction to hear this case, pursuant to 28 U.S.C. §157(a), Local Civil Rule 83K(a), and the general order of the United States District Court dated July 19, 1984, which refers title 11 proceedings to the Bankruptcy Court. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(1) and (b) (2).[1]

## PROCEDURAL HISTORY

The Debtor filed for chapter 7 bankruptcy on April 17, 2012. The Plaintiff filed this action on May 22, 2014 alleging two causes of action: count 1) for turnover, pursuant to 11 U.S.C. § 542; and count 2) for collection of monies or restitution, pursuant to P.R. Laws Ann. tit 31 §§ 2991-2992. The Plaintiff amended the complaint (Docket No. 8). Defendants answered the amended complaint and Defendant QB Construction S.E. denied any involvement in the contractual arrangements.[2] In its answer, Defendant QB Construction, Inc. raised the statute of limitations for the contractual claims that the Plaintiff asserts as an affirmative defense.[3] Subsequently, the Plaintiff filed a summary-judgment motion premised under count one of the

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rules" shall be to the Federal Rules of Bankruptcy Procedure.

[2] Docket No. 29, at 2 ¶6.

[3] Docket No. 24, at 4 ¶3. Defendants argue that the statute of limitations applicable to the Plaintiff's claim has elapsed, leaving the Plaintiff without remedy. Defendants first argued that the five-year limitations period of the Commerce Code, P.R. Laws Ann. tit. 10 § 1902, bars the Plaintiff's contractual claims. Id. & Docket No. 29 at 3, ¶4. Subsequently, Defendants appear to argue that the applicable statute is a three-year limitations period in the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5297 (Docket No. 86, at 2). However, "[s]ection 542 does not impose a statute of limitations on turnover claims." 5 Collier on Bankruptcy P 542.01 (16th 2019)(citing Burch v. Ganz (In re Mushroom Transp. Co.), 382 F.3d 325, 336–37 (3d Cir. 2004); Olsen v. Reuter (In re Reuter), 499 B.R. 655, 668 (Bankr. W.D. Mo. 2013) (stating that "[t]here are no strict deadlines or statute of limitations mandating when the Trustee must take such action").

complaint for a § 542 (Docket No. 46) action, to which Defendants filed an opposition thereto (Docket No. 57). The parties filed several reply and sur-reply motions.[4] Defendants filed a motion to strike the Plaintiff's affidavit proffered in support of her summary-judgment motion for lack of personal knowledge (Docket No. 88). Plaintiff opposed and Defendants filed a reply (Docket Nos. 95 and 98).

DISCUSSION

Under Fed. R. Civ. P. 56(c), made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law. Fed. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). "The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of triable fact and if he does not discharge that burden, then he is not entitled to judgment." Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 45 (1st Cir. 1984)(citations omitted).

The parties stipulate that Debtor and Defendant QB Construction, Inc. subscribed a contract dated March 23, 2006 ("the Airport Contract") and a contract dated October 17, 2006 (the "Condominium Contract") (collectively, the "Contracts"), wherein Defendant QB Construction, Inc. was the General Contractor and Debtor was the subcontractor in relation to landscaping services and/or landscaping materials.[5]

---

[4] Docket Nos. 70, 71, 79, 87, 94, & 97.

[5] Docket Nos. 47 & 58. The reason for the Plaintiff's inclusion of co-Defendant QB Construction, S.E. is not apparent from the Plaintiff's filings. The Plaintiff's summary-judgment evidence only demonstrates that co-Defendant QB Construction, Inc. subscribed both Contracts. See Docket Nos. 47-1 & 47-4.

**Amount Owed**

In her summary-judgment motion, the Plaintiff requests that the Court enter judgment in the amount of $192,587.27 against Defendants for monies owed to the Debtor's estate.[6] After receiving the affidavits submitted with Defendants' opposition motion, the Plaintiff changes the amount owed from $192,587.27 to $46,811.00.[7]  Defendants submitted check payments in the amount of $319,688.40 which contest the Plaintiff's claim for $192,587.27.[8]  In response to the check payments, the Plaintiff appears to have then calculated the amount allegedly due to the estate to $46,811.00.  The Plaintiff then contends that at least $19,021.67 remains outstanding to be paid to the estate because Defendants admitted in their declaration that "Once all required/certifications had been produced, QB Construction, Inc. would have paid [Debtor] a retainage of $12,245.01 for "Terminal A" project as well as a retainage of $6,776.66 for the "Coliseum" project, for a total of $19,021.67."[9]  However, Defendants' evidence reflects a collection letter whereby the Plaintiff attempted to collect the amount of $19,021.68.[10]  This amount materially differs from the $46,811.00 the Plaintiff later asserted in her reply-motion without submitting adequate summary-judgment evidence for this new amount.[11]  Defendants claim that the Plaintiff is not entitled to any monies because Debtor failed to submit the required certification to receive the final payments under the Contracts. As such, based on the evidence, it is unclear to the Court the exact amount that remains unpaid, if any. "It is not the obligation of the Court to play the role of plaintiff's

---

[6] Docket 46, at 7, ¶7.

[7] Docket 70, at 2, ¶7.

[8] Docket No. 57.

[9] Docket No. 57-2, at 2, ¶6.

[10] Docket No. 57-6, at 1.

[11] Docket 70, at 2, ¶7. Although in a footnote the Plaintiff cites to the Contract amounts—$131,500 for the Condominium Contract and $235,000 for the Airport Contract—to account for the difference between the total Contracts' amount and Defendants' payments to Debtor of $319,688.40, the Plaintiff does not mention whether and how change orders subscribed by the parties and included elsewhere in her summary-judgment evidence alter amounts allegedly due. Subsequently, Plaintiff filed an amended reply motion similar to that on Docket 70 where she amended her allegations as to the outstanding amount, from $46,811.00 to $26,418.00. Docket No. 79 at ¶¶ 8, 14 & 16. But see ¶9 stating "$26,8110" as the outstanding balance and the "wherefore" paragraph, requesting "judgment in its favor for $46,8110, plus fees and costs." Docket No. 79 at 3.

advocate, or to scour the record for evidence supporting a theory when plaintiff himself has neglected to do so." <u>Bolduc v. Town of Webster</u>, 629 F.Supp.2d 132 (D. Mass. 2009). As a result of the conflicting amounts owed, there is a disputed material fact that prevents the Court from granting summary judgment on count one in favor of the Plaintiff.

**Final Payment Clauses**

The Plaintiff bases her request for turnover of property on the notion that any outstanding amount is collectible pursuant to the Contracts. However, the Plaintiff does not address whether Debtor fulfilled its contractual obligations in order to receive any outstanding payments. Defendants argue that upon completion of the projects, Debtor had to present documentation, including a certification from the State Insurance Fund (also known as the "Fondo del Seguro del Estado") accrediting that there was no outstanding debt with this entity in relation to the Contracts; thereby certifying that Debtor had no debts relating to the projects. The Condominium Contract states the following:

> ARTICLE V - Final Payment. The final payment shall be due within sixty (60) days after
> completion and acceptance of the Work by the Contractor and the Architect, provided first, however, that (1) the Contractor shall have received final payment therefor from the Owner, (2) the Subcontractor shall have furnished evidence satisfactory-to the Contractor that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes, Fondo del Seguro del Estado premiums, or other items performed, furnished or incurred for or in connection with the Work and (3) the Subcontractor shall have executed and delivered in a form satisfactory to the Contractor a General Release running to and in favor of the Contractor and the Owner. Should there prove to be any such claim, obligation or lien, after final payment is made, the Subcontractor shall refund to the Contractor all monies that the Contractor and/or the Owner shall pay in satisfying, discharging, or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith all in strict accordance with the Contract Documents, and payment to be consistent with Article lV and Article X Sections 1g, 20-23 inclusive of this Contract.

Docket No. 57-1, Condominium Contract, at 2.

The Airport Contract states the following:

> ARTICLE 12 - Final Payment

> [. . .] § 12.2 Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

Docket No. 47-1, Airport Contract, at 11.

According to Defendants' evidence, upon completion of both projects, Debtor did not present any evidence related to the certifications required for final payment of $12,245.01 under the Airport Contract, as well as the final payment of $6,776.66 under the Condominium Contract, for a total of $19,021.67.[12] The Plaintiff provided some documentation required under the Contracts but not all.  For instance, the Plaintiff includes copies of State Insurance Fund certifications in the Spanish language as part of her documentary evidence.[13] The Plaintiff did not provide complete evidence regarding State Insurance Fund debt certifications for the remaining years (which appear to end in 2010). It is not clear to the Court—whether from the arguments or the exhibits—the year Debtor completed each project. The Court may at the least conclude from Defendants' declarations that Debtor completed either project by 2010. Defendants rebutted the Plaintiff summary-judgment motion by demonstrating that Debtor has an outstanding debt that the State Insurance Fund assessed during years 2009 and 2010.[14]

The Contracts required that the Debtor demonstrate to QB Construction, Inc. that no indebtedness to the State Insurance Fund existed in relation to the Contracts in order to receive final payment.[15] Defendants presented evidence contesting Debtor's indebtedness with the State Insurance Fund and therefore contesting Debtor's entitlement to receive any final payment amount

---

[12] Docket No. 57-2, at 2, ¶¶6-7.

[13] Docket No. 46-1, 34-37. Local Rule 5(g) requires in part, that "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts."Collazo-Perez v. Estado Libre Asociado De Puerto Rico, (D.P.R. June 5, 2017).

[14] Docket 98, Exhibit 1.

[15] The Plaintiff argued that should "Debtor have outstanding debts stemming from the worked [sic] performed for Defendants, they shall be paid by the Bankruptcy Estate, pursuant Section 726 of the Bankruptcy Code." Docket No. 70 at 2, ¶2.

as per the Contracts. As such, Defendants have contested whether the Plaintiff's claim has matured under the Contracts.

Payment of debts that are property of the estate is governed by § 542(b) which provides in part that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). An action under § 542(b) applies to an undisputed debt when presently payable. In re Conex Holdings, LLC, 518 B.R. 792, 801 (Bankr. D. Del. 2014) ("A properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt."). It is not appropriate to bring a turnover action on an unliquidated claim for breach of contract. See United States v. Inslaw, Inc., 932 F.2d 1467, 1472 (D.C. Cir. 1991) ("It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes . . . "); In re Picacho Hills Util. Co., Inc., 579 B.R. 245, 252 (Bankr. D.N.M. 2017) (". . . unliquidated state law damage claims are not within the scope of § 542(b).").

The Plaintiff's summary-judgment motion does not support the elements of a turnover claim, i.e.: that Defendants owe a debt that is matured, payable on demand, or payable on order. Defendants have provided the Court with evidence that contests the Plaintiff's entitlement to payment under the Contracts. For this reason, the Plaintiff must present evidence at trial that supports the elements of a turnover action under count one of the amended complaint. In the alternative, the Plaintiff must also prove at trial the estate's entitlement to the monies at issue under her collection of monies or restitution claims in count two, pursuant to P.R. Laws Ann. tit. 31 §§ 2991-2992.

## MOTION TO STRIKE

Defendants filed a "Motion to Strike Plaintiff's Statement of Facts and Trustee's Declaration in Support of its Motion for Summary Judgment."[16] Defendants argue that the Plaintiff's Sworn Statement,[17] cannot be relied on as summary-judgment evidence by this Court because "the plaintiff lacks personal knowledge to declare as to the allegation that the company complied with the terms of the services agreement reached between QB and Irraga."[18] Defendants argue that Rule 56(c)(4) of Federal Rules of Civil Procedure require personal knowledge and as such, the Plaintiff's affidavit is procedurally deficient. Specifically, Defendant argues that Plaintiff has not laid the "grounds or foundation for personal knowledge. She relies on the revision of documents not prepared by her," thus not meeting the standard set forth by Rule 56.[19] However, Plaintiff's affidavit submitted in support of the summary-judgment motion is based on Plaintiff's personal knowledge as trustee of the chapter 7 petition and on the tasks associated with the Plaintiff's review of the Debtor's books and records, which are in her custody. In Re Walker, 566 B.R. 504, 513 (Bankr. E.D. Tenn. 2017). Defendants' Motion to Strike is meritless and is therefore denied.

## CONCLUSION

The Court concludes that there are genuine issues as to material facts. As a result, the Plaintiff is not entitled to summary judgment as to count one of the amended complaint. Secondly, Defendant's motion to strike is denied. The Court will enter a separate order scheduling a hearing

---

[16] Docket No. 88.
[17] Docket No. 46-1, at 69.
[18] Docket 88, at 2.
[19] Docket 88, at 5.

in this case.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of April, 2019.

MILDRED CABÁN FLORES
United States Bankruptcy Judge